**STATE EX REL. UTILITIES COMM. v. N.C. CELLULAR ASSN.**

[111 N.C. App. 801 (1993)]

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, THE PUBLIC STAFF OF THE UTILITIES COMMISSION, METRO MOBILE CTS OF CHARLOTTE, INC., GTE MOBILE COMMUNICATIONS INC., CONTEL CELLULAR COMPANY, GENERAL CELLULAR CORPORATION, BLUE RIDGE CELLULAR TELEPHONE COMPANY, G.M.D. LIMITED PARTNERSHIP, CENTEL CELLULAR COMPANY, N.C. RSA 2 CELLULAR TELEPHONE COMPANY, N.C. RSA 3 CELLULAR TELEPHONE COMPANY, CELLCOM OF HICKORY, INC., ALLTEL MOBILE COMMUNICATIONS, INC., AND UNITED STATES CELLULAR CORPORATION, APPELLEES v. NORTH CAROLINA CELLULAR ASSOCIATION, INC., APPELLANT

No. 9210UC815

(Filed 7 September 1993)

1. **Telecommunications § 1.1 (NCI3d) — deregulation of cellular telephone service — competitiveness of service**

The evidence supported the Utilities Commission's finding and conclusion that cellular telephone service is competitive in North Carolina as a whole so as to satisfy one prerequisite to the Commission's deregulation of cellular service where it tended to show that although some rural service areas (RSAs) had no carrier or only one carrier, a carrier operating alone in an RSA must behave competitively because it knows that another carrier will soon share the RSA, two carriers had been licensed and granted construction permits for all but one RSA at the time of the hearing, and all RSAs will have two carriers in operation in a matter of months.

**Am Jur 2d, Administrative Law §§ 673, 683.**

2. **Telecommunications § 1.1 (NCI3d) — cellular telephone service — deregulation in public interest**

The evidence supported the Utilities Commission's finding and conclusion that deregulation of cellular telephone service is in the public interest where there was evidence that deregulation would increase competition among carriers because advance notice of price changes would no longer be required; regulation inhibits incentives for technological innovation; regulation decreases competition strategies and consumers are better off if competitors can explore the entire range of competitive options; and cellular prices are lower in deregulated states.

**Am Jur 2d, Administrative Law §§ 673, 683.**

3. **Telecommunications § 1.1 (NCI3d) — deregulation of cellular service — bundling — scope of proceeding not improperly enlarged**

Where the Utilities Commission's notice and order stated that the issue before it was whether bundling of cellular equipment and services without regulation is in the public interest, and bundling has been permitted but regulated in North Carolina, the Commission did not enlarge the scope of the proceeding without notice by its conclusion that bundling is in the public interest so long as consumers have the right to purchase service and equipment independently, since it is clear that the Commission was not deciding whether bundling itself is in the public interest but only whether bundling should be permitted without regulation.

**Am Jur 2d, Administrative Law §§ 359, 360.**

4. **Telecommunications § 1.1 (NCI3d) — cellular service resellers — deregulation improper**

The Utilities Commission erred in deregulating cellular service resellers because N.C.G.S. § 62-125 authorizes the Commission to deregulate only cellular service providers licensed by the FCC, and resellers are not licensed by the FCC.

**Am Jur 2d, Administrative Law §§ 617, 646.**

Appeal by intervenor from order entered 14 February 1992 by the North Carolina Utilities Commission. Heard in the Court of Appeals 24 May 1993.

This appeal arises from an order in which the North Carolina Utilities Commission (Commission) deregulated the provision of cellular telephone service in North Carolina. Until this time cellular service was regulated under Chapter 62 of the North Carolina General Statutes.

The Federal Communications Commission (FCC) established a two-carrier market structure for the provision of cellular telephone service. The FCC, through a lottery, initially awards a license to a cellular carrier to operate in a certain area, and that is followed by the issuance of a construction permit. The license will lapse if cellular service is not available within eighteen months after the construction permit is issued. If the license happens to lapse, the area is relotteried to ensure that another carrier will be providing cellular service in that area.

STATE ex rel. UTILITIES COMM. v. N.C. CELLULAR ASSN.

[111 N.C. App. 801 (1993)]

Cellular carriers are licensed to operate in two types of service areas: (1) metropolitan statistical areas (MSAs) and (2) rural service areas (RSAs). North Carolina has nine MSAs and fifteen RSAs. Due to the FCC's licensing scheme, there has been considerable delay in granting licenses for the RSAs in North Carolina, but as of 17 December 1991, construction permits were issued for two competing carriers in all but one RSA. The MSAs and RSAs that were served by two competing carriers as of 21 November 1991 represented seventy percent of North Carolina's population.

In May 1991, the Commission was authorized by statute to deregulate cellular service in North Carolina. Petitioners filed their joint petition on 24 May 1991 seeking deregulation. After hearing evidence on the issue, the Commission ordered the deregulation of cellular service. From this order intervenor appeals.

*Bailey & Dixon, by David M. Britt, Ralph McDonald, and Cathleen M. Plaut, for intervenor appellant.*

*Public Staff/Utilities Commission, by staff attorney Robert B. Cauthen, Jr., appellee.*

*Parker, Poe, Adams & Bernstein, by Henry C. Campen, Jr., for petitioner appellees GTE Mobile Communications, Inc., Contel Cellular Corporation, General Cellular Corporation, Blue Ridge Cellular Company, and G.M.D. Limited Partnership.*

*Crisp, Davis, Schwentker, Page, Currin & Nichols, by Robert F. Page, for petitioner appellees Centel Cellular Company, N.C. RSA 2 Cellular Telephone Company, and N.C. RSA 3 Cellular Telephone Company.*

*Bode, Call & Green, by Robert W. Kaylor, for petitioner appellee Metro Mobile CTS of Charlotte, Inc.*

*Burns, Day & Presnell, by F. Kent Burns, for petitioner appellees ALLTEL Mobile Communication, Inc. and United States Cellular Corporation.*

*Kennedy, Covington, Lobdell & Hickman, by James P. Cooney, III, for petitioner appellee Cellcom of Hickory, Inc.*

ARNOLD, Chief Judge.

I

In 1991, the General Assembly enacted N.C. Gen. Stat. § 62-125 which permits the Commission to exempt cellular telephone service from regulation. The Commission may grant the exemption only if it finds (1) that cellular telephone service is competitive, and (2) that exemption is in the public interest. G.S. § 62-125 (Cum. Supp. 1992). After a hearing on the matter, the Commission concluded that the two requirements for deregulation were satisfied and issued an order deregulating cellular service.

The Commission's decision is prima facie just and reasonable and will be reversed or modified only if it (1) violates a constitutional provision, (2) exceeds the Commission's statutory authority or jurisdiction, (3) is a result of unlawful proceedings, (4) is affected by other errors of law, (5) is unsupported by competent, material and substantial evidence, or (6) is arbitrary or capricious. The Commission's decision, upon review, is viewed in light of the entire record. N.C. Gen. Stat. §§ 62-94(b) and (c) (1989).

A. Competitive service.

[1] Appellant contends that the evidence does not support the Commission's finding and conclusion that the provision of cellular service is competitive. As long as there is substantial and competent evidence in the record to support the Commission's finding and conclusion we must affirm, even though appellant supports its argument with evidence to the contrary. *State ex rel. Utilities Comm'n v. Springdale Estates Ass'n*, 46 N.C. App. 488, 490, 265 S.E.2d 647, 649 (1980). We believe that the record supports the Commission's finding and conclusion.

Appellant first argues that because sixty percent of the RSAs had zero carriers, or only one carrier, at the time of the hearing, the market could not, by definition, be competitive in those areas. There was evidence, however, that in RSAs with only one carrier, the first carrier had to behave competitively because the presence of a second carrier was imminent. As petitioners' economist explained, a carrier operating alone in an RSA must behave competitively because it knows that another carrier will soon share the RSA, and if the original carrier gouges customers initially, it will ultimately suffer for it. The evidence indicated that a second carrier would in fact soon join the carriers which were operating

alone. Licenses to provide cellular service are very valuable and highly sought after, and once a carrier obtains a license to provide service, the license is almost never allowed to lapse. In addition, there was evidence that two carriers had been licensed and granted construction permits for all but one RSA at the time of the hearing. In all, the evidence supported a conclusion that all of the RSAs would have two carriers in operation in a matter of months. In light of this evidence, the Commission was justified in finding that cellular service is competitive in North Carolina as a whole.

Appellant also argues that there was no competition in the areas where two carriers were operating. The weighing of evidence and the judgment thereon are matters for the Commission. *State ex rel. Utilities Comm'n v. Carolina Coach Co.*, 260 N.C. 43, 54, 132 S.E.2d 249, 257 (1963). Each side presented substantial evidence in support of its position, but the Commission chose to place more weight on petitioners' evidence. Furthermore, petitioners' economist convincingly rebutted much of the evidence presented by appellant's economist.

The Commission's order describes in detail the evidence it relied upon in concluding that cellular service is competitive. Rather than repeating the evidence here, suffice it to say that we reviewed the entire record and found substantial and competent evidence to support the Commission's finding and conclusion that the provision of cellular service in North Carolina is competitive. We will not, therefore, disturb this conclusion.

B.  Public interest.

[2]  Appellant argues that the evidence did not support the finding and conclusion that deregulation is in the public interest. We disagree with this argument as well.

Petitioners' witnesses provided ample evidence that deregulation was in the public interest. There was evidence that deregulation would increase competition among carriers because advance notice of price changes would no longer be required, that regulation inhibits incentives for technological innovation, and that regulation decreases competition strategies and consumers are better off if competitors can explore the entire range of competitive options. An economist's study indicated that cellular prices are five to fifteen percent lower in deregulated states. The vice president and general manager of GTE Mobilenet-Southeast testified, based upon

his experience in deregulated states, that deregulation could lead to decreased prices and to increased promotion and pricing strategies to the benefit of consumers. He described how regulation increases the risk of implementing different price strategies because if an implemented strategy did not work, regulation hindered companies in retracting it. He also testified that GTE's rates are on average lower in deregulated states in this region. This substantial and competent evidence supports the Commission's finding and conclusion that deregulation is in the public interest.

Although evidence in support of appellant's position exists, the Commission concluded that the provision of cellular service is competitive and that deregulation is in the public interest. Even if we disagreed with the Commission's conclusions, we could not change them because they are supported by substantial and competent evidence. For these reasons, that portion of the Commission's order deregulating cellular telephone service is affirmed.

## II

Appellant also assigns error to two additional conclusions in the order which are not related to deregulation of cellular telephone service. Appellant first argues that the Commission erred in concluding that bundling of cellular premises equipment and cellular service is in the public interest, and second, that the Commission erred in deregulating cellular service "resellers."

### A. Bundling.

[3] Bundling is the practice of selling telephone equipment and telephone service together. The FCC has indicated that bundling is unlawful, but it is not clear that the practice referred to as bundling in this case is the practice referred to by the FCC. Petitioner's economist, who had extensive experience in the cellular industry, testified that the practice in North Carolina is not really bundling because customers have the option of purchasing service and equipment separately or together. The Commission noted this distinction in its order when it stated that "packaging," as opposed to "tying" or "bundling," is the best word to describe the practice in North Carolina. A "tying" arrangement gives the customer no option—equipment and service must be purchased together.

The Commission concluded that "so long as consumers have the right to purchase service and [equipment] independently, [bundling] is in the public interest." Appellant does not argue that

this conclusion is erroneous or unsupported by evidence; instead, appellant argues that it was deprived of due process because the Commission did not provide notice of or an opportunity to be heard on the bundling issue. The Commission denied appellant's motion to enlarge the scope of the proceeding to consider if bundling is lawful and in the public interest, but the Commission expressly notified the parties that it would consider whether or not *bundling without regulation* is in the public interest. Appellant argues that the Commission nonetheless enlarged the scope of the proceeding, without giving the parties notice or an opportunity to be heard, to consider if bundling itself is in the public interest. We disagree with appellant's perception of both the proceeding and the Commission's conclusion.

At first glance, it does appear that the Commission addressed whether or not bundling is in the public interest, but closer scrutiny reveals that this was not so. The Commission stated early on in its order that the "issue [before it] was limited to whether *bundling in the absence of regulation* is in the public interest." (Emphasis added.) This was the only pertinent issue because bundling has been permitted in North Carolina so long as the carrier filed a tariff. In other words, it has been permitted but regulated. Bundling remains a permitted practice in North Carolina, and the Commission prevented appellant from challenging the practice. There was no need to address the lawfulness of bundling, or if it is in the public interest, because it was irrelevant to the main issue at the hearing—deregulation of cellular service. The only change from the prior practice is that now bundling is permitted without regulation, a change which follows directly from the issue considered at the hearing.

The language in the order is misleading, but considering the prior permissibility of bundling, and the Commission's express statement in the order of what it was deciding, it is clear that the Commission did not enlarge the scope of the proceeding. Appellant was given notice of the issue under consideration and cannot complain that it did not have notice of or an opportunity to present evidence on an issue that was not before the Commission. This argument is rejected.

B. Resellers.

[4] Finally, appellant argues that the Commission exceeded its authority when it deregulated cellular service resellers. The Com-

mission had authority to "exempt domestic public cellular radio telecommunications service providers, *if licensed by the Federal Communications Commission*, from regulation under any or all of the provisions of [Chapter 62]." G.S. § 62-125 (emphasis added). Appellant argues that because resellers of cellular service are not licensed by the FCC, they cannot be deregulated.

Although we agree with petitioners that appellant's construction produces an absurd result, we cannot ignore the express language of the statute. The statute limits the Commission's authority such that it may deregulate only cellular service providers that are licensed by the FCC. All wholesale providers must be licensed by the FCC, so it is obvious which providers the legislature intended to benefit. We must, therefore, read the limitation as prohibiting the Commission from deregulating resellers because they are unlicensed providers. Otherwise, the limiting language in the statute would be rendered meaningless.

We must reverse that part of the Commission's order which deregulates cellular service resellers and remand for modification of the order. In all other respects, the Commission's order is affirmed.

Affirmed in part, reversed in part and remanded.

Judges ORR and MARTIN concur.